UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

AHARON FRANCO,

                           *Plaintiff,*

       - against -

CARON OF FLORIDA, INC.,
D/B/A CARON RENAISSANCE
OCEAN DRIVE, D/B/A
CARON HANLEY CENTER AT ORIGINS,
AND XYZ CORP.,
THAT COMPANY WHOSE NAME IS PRESENTLY
UNKNOWN TO PLAINTIFF AND BEING THE ENTITY
THAT OWNED AND OPERATED
CARON RENAISSANCE OCEAN DRIVE,

                          *Defendants.*

--------------------------------------------------------X

CASE NO.:

VERIFIED COMPLAINT

Plaintiff, Aharon Franco ("Franco" or "Plaintiff"), by his attorneys, Oved & Oved LLP, complaining of the Defendants, alleges, upon information and belief, as follows:

## SUMMARY OF ACTION

1.    This lawsuit seeks monetary damages stemming from Defendants' breach of contract as well as their negligent and reckless conduct in violation of (i) well-settled professional standards for treating and diagnosing a patient with a psychiatric disorder; and (ii) federal and state statutes, including, but not limited to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), mandating that personal medical information of Defendants' patients be kept strictly confidential.

2.    Most egregiously, Defendants, who own and operate an exclusive high-priced drug and alcohol addiction rehabilitation facility, wholly ignored and overlooked Plaintiff's symptoms of bi-polar disorder, and instead recklessly and self-servingly misdiagnosed Plaintiff as having a chemical addiction, in order to have him treated at Defendants' facilities at a cost of

$55,000 per month.    But for Defendants' negligent misdiagnosis, Plaintiff would never have undergone the invasive and unnecessary treatment for chemical addiction at Defendants' facilities that resulted in the severe mental anguish, physical ailments, and monetary damages complained of herein.

3.      After misdiagnosing Plaintiff with a chemical addiction and in furtherance of Defendants' mantra, policies, and federally-mandated obligations to discretely treat their private patients, Defendants further induced Plaintiff to seek treatment at Defendants' exorbitantly-priced treatment facilities by representing to Plaintiff that his confidential personal and sensitive healthcare information that he was required to disclose for his medical and psychological treatment would remain confidential.

4.      Notwithstanding those assurances which Plaintiff relied upon to his detriment, Defendants improperly (i) transmitted the Plaintiff's private, highly sensitive, confidential healthcare information without utilizing proper safeguards and appropriate security measures; and (ii) allowed Plaintiff's wife unsupervised access to Plaintiff's private bedroom at Defendants' rehabilitation facility while being fully aware that Plaintiff left all of his private and confidential healthcare information there.

5.      As a direct result of Defendants' failure to properly safeguard Plaintiff's private and confidential healthcare information, Defendants caused Plaintiff, who specifically sought out and selected Defendants' rehabilitation facility from amongst many other rehabilitation facilities, because of its purportedly stellar reputation of discreetly and anonymously treating their patients, to suffer significant embarrassment, severe mental anguish, and insomnia all of which resulted in ruining his relationship with his wife, his children and his other family members, as well as a diminished standing in his community and amongst his business associates

and colleagues.

6.      As a direct result of the severe mental anguish, psychological trauma, and monetary loss that Defendants caused Plaintiff, Plaintiff seeks damages for Defendants' (i) breach of contract; (ii) negligence; (iii) negligent infliction of emotional distress; (iv) breach of fiduciary duty; (v) medical malpractice; and (vi) breach of Plaintiff's statutory patient bill of rights as codified under Florida state law.

## PARTIES

7.      Plaintiff Aharon Franco is domiciled in the State of New York, and was married for 12 years prior to undergoing treatment at Defendants' facility,

8.      Defendant Caron of Florida, Inc. ("Caron of Florida") is a Pennsylvania corporation that owns and operates Caron Renaissance Ocean Drive ("Caron Ocean Drive"), Caron Hanley Center at Origins (the "Hanley Center") and XYZ Corp. (Caron of Florida, Caron Ocean Drive, Hanley Center, and XYZ Corp. are collectively referred to as "Caron.")

9.      The Hanley Center is a private, exclusive, and high-priced detoxification center located in West Palm Beach, Florida.

10.     Caron Ocean Drive is a high-end alcohol and drug addiction rehabilitation center located in Boca Raton, Florida.   In order to maintain its exclusivity amongst its target market, Caron Ocean Drive charges its patients $55,000 per month for the relapse and extended residential rehabilitation treatment it provides.

11.     Recognizing the embarrassment, mental anguish, and emotional suffering, facing those struggling from addiction, above all, Caron touts its discretion and confidentiality to its selective clientele, which includes prominent business leaders and celebrities, affording them the ability to undergo potentially career-ending rehabilitation treatments in a private facility where the confidentiality of their addictions is maintained, preserved, and protected.

Defendants' website and other promotional literature states that "[Caron] will maintain the client's confidentiality in accordance with all applicable Federal and state privacy regulations and [its] own strict policies and procedures."  *See* http://www.caronoceandrive.org/about-ocean-drive/our-program/care-management.

12.    Indeed, in order to induce perspective patients, including Plaintiff, to obtain treatment for what is an excruciating and embarrassing addiction, Caron emphasizes that treatment occurs in a "private, supervised setting" where patients are given "private bedrooms," and are even transferred from the residential areas to clinical sites by "private cars."  *See* http://www.caronoceandrive.org.

13.    Defendant XYZ Corp. is a business entity, whose name is presently unknown to Plaintiff, which owns and operates Caron of Florida, Caron Ocean Drive, and the Hanley Center.

### JURISDICTION & VENUE

14.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the statutory threshold, exclusive of interest and costs.

15.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), (c), because all Defendants had been and continue to provide services to customers residing in the district.

16.    Plaintiff also received treatment in a facility owned and operated by an affiliate of Defendant XYZ Corp. which is located in New York, New York.

### FACTUAL BACKGROUND

**A. Plaintiff Seeks Treatment at Caron's Rehabilitation
Facilities, Based on Defendants' Assurances of Discretion**

17.    On or about April 2013, Plaintiff made an appointment at the Hanley Center

to seek psychological treatment and rehabilitation for what, unbeknownst to him at the time, were behavioral symptoms directly linked to his then undiagnosed bi-polar disorder.

18.     Despite having many less-expensive options available for diagnosing and treating his symptoms, Plaintiff specifically and purposely sought out and selected his treatment at Caron based upon a recommendation from a treating psychiatrist at an out-patient facility in New York. Plaintiff's psychiatrist described to Plaintiff Caron's stellar reputation for discretely, privately and confidentially treating its clientele, which is exactly what Plaintiff, a successful businessman, needed. Specifically, Plaintiff sought treatment at a rehabilitation facility where he could feel safe knowing that his private personal healthcare information would be maintained confidentially and where he could undergo his treatment anonymously.

19.     Caron guaranteed such discrete treatment to Plaintiff and made assurances that all of Plaintiff's personal healthcare information would remain private and confidential.

20.      Indeed, Caron's own website attests that even a prospective patient's initial phone call made to Caron for an intake assessment is kept strictly confidential.

21.     On or about April 15, 2013, Plaintiff was examined by Hanley Center's professional staff of doctors and psychiatrists. Despite exhibiting multiple symptoms of bi-polar disorder, a disorder that Defendants do not treat at their facilities, Caron apparently missed all of those symptoms, and instead misdiagnosed Plaintiff with a chemical substance addiction, for which Defendants provide treatment for a cost of $55,000 per month. Defendants also ignored Plaintiff's medical history, where one of Plaintiff's treating physicians in New York stated his belief that Plaintiff was suffering from bi-polar disorder.

22.     Naturally, the Hanley Center's professionals said that they could "discretely" treat Plaintiff for the "addiction," with which their staff had negligently diagnosed him. As a

result, Plaintiff was admitted to the Hanley Center.

23.     In furtherance of Defendants' policies, protocols, and mantra to discretely treat Plaintiff's diagnosed addiction, once admitted to the Hanley Center, Defendants provided Plaintiff with several documents regarding the discrete treatment of their patients and their sensitive personal healthcare information, including, *inter alia*, a document entitled "Patient Privacy Practices Notice" (the "PPPN").

24.     The PPPN stated that, in addition to providing for Plaintiff's rights in accordance with the "federal privacy standard," Caron would also "maintain the privacy of [Plaintiff's] health information, including implementing <u>reasonable and appropriate physical, administrative and technical safeguards</u> to protect it."   (emphasis added.)   A true and correct copy of the PPPN is attached hereto as **Exhibit A.**

25.     The PPPN also informed patients that Caron took its patient privacy responsibilities seriously and accordingly, had trained its personnel regarding Caron's privacy practices and implemented a sanction policy for those employees who breached Caron's privacy protocols.

26.     Shortly thereafter, Plaintiff was transferred to Caron Ocean Drive, the residential facility under the Caron umbrella that allowed for more long-term psychological and addiction treatment.

27.     Caron Ocean Drive's website directly states:

> The Ocean Drive residences are housed in two spacious, elegantly appointed homes in an upscale community. **Privacy is a key concern at Ocean Drive**. Therefore, a state-of-the-art **security system is in place to ensure clients' safety and confidentiality**.

(emphasis   added.)   *See*   http://www.caronoceandrive.org/about-ocean-drive/our-campus/residences/.

28.     As with the Hanley Center, in order to induce Plaintiff and other patients to seek treatment at Caron Ocean Drive, Caron Ocean Drive stated to Plaintiff that the treatment at Caron Ocean Drive was discrete and confidential, in order to meet its clients' expectations of privacy and anonymous treatment.

29.     As a further assurance to Plaintiff, Caron professionals also explained to him that the PPPN was effective at Caron Ocean Drive.

30.     Additionally, when Plaintiff was transferred to Caron Ocean Drive, Caron Ocean Drive provided him with a Patient Handbook.

31.     The Patient Handbook states:

**Since this is a treatment facility, professional behavior includes respecting the confidentiality of patients who are currently in or have been discharged from treatment. Respecting the rules of confidentiality is in accord with federal and state regulations and the profession's Code of Ethics.**

True and correct excerpts of the Patient Handbook are attached hereto as **Exhibit B.**

32.     The Patient Handbook also contains a list of Caron Ocean Drive Patient Rights, which include, *inter alia,*

- a right to privacy and security in the treatment environment;

- a right to confidentiality; and

- a right to confidentiality of protected healthcare information.

**B. In Violation of Industry Standards and State and Federal Law, Caron Transmits Plaintiff's Personal Confidential Medical <u>Information Via Unsecured E-mail</u>**

33.     At this time, as part of the admission process to Caron Ocean Drive, Andrew Strauss, a Caron employee responsible for patient intake, recklessly transmitted to Plaintiff, via e-mail, several assessment forms required to treat his misdiagnosed case of chemical addiction, including a Psychosocial History form, a Spirituality Assessment form, and a Sexual and Trauma

Assessment form (collectively, the "Forms").

34.    The Forms were comprehensive, invasive questionnaires seeking complete disclosure of highly confidential, intimate and sensitive details of Plaintiff's private life, sexual history, and sexual proclivities, including, without limitation, Plaintiff's sexual fantasies, compulsions, and dysfunctions, as well as his history of abuse, adultery, pornography use, exhibitionism, voyeurism, and fetishism.

35.    But for Defendants' reckless misdiagnosis of Plaintiff, Plaintiff would not have been required to complete these Forms seeking highly confidential, personal healthcare information.

36.    As with most people seeking psychological treatment, Plaintiff was obviously concerned about divulging such intimate details of his life.  However,  in order to induce Plaintiff to complete the Forms with candor and divulge the sensitive details requested therein so that he could commence paying for his high-priced treatment, Mr. Strauss assured Plaintiff that the information contained in the Form would be held in the strictest confidence and not viewable by anyone, except for Caron therapists, and even then only on a "need to know basis."

37.    The Forms were not transmitted to Plaintiff via a technically secure portal or encrypted e-mail and, in violation of HIPAA, state regulations and industry standards, neither Mr. Strauss's email nor the Forms contained a message indicating that the Forms contained private healthcare information intended solely for the recipient.

38.    Plaintiff was asked to complete the Forms and transmit them back to Mr. Strauss via e-mail.  Once again in violation of industry standards and federal and state laws, including, but not limited to HIPAA, Defendants did not provide Plaintiff with a secure portal or other encrypted connection by which to transmit the completed forms, even though Defendants

knew that the Forms contained highly confidential, private healthcare information.

39.     In reliance on Mr. Strauss's representations that the completed Forms would be kept in the strictest confidence, Plaintiff completed the Forms and transmitted them back to Mr. Strauss via e-mail.

**C.   Caron Recklessly Allows Mrs. Franco To Remain Unsupervised in Plaintiff's Room**

40.     Several weeks later, on or about May 9, 2013, in blatant disregard for Plaintiff's personal privacy and for the policies set forth in the PPPN and Patient Handbook, and in violation of Plaintiff's statutorily-protected rights, Caron employees, negligently granted Plaintiff's wife ("Mrs. Franco") access to Plaintiff's private bedroom, while they knew Plaintiff was undergoing treatment in a different section of the Caron Ocean Drive facility and would not return to his bedroom for over an hour. Caron employees never requested permission from Plaintiff to allow Mrs. Franco into his private bedroom nor did they notify Plaintiff that she was on the premises of the Caron Ocean Drive facility.

41.     Caron's employees allowed Mrs. Franco to remain in Plaintiff's private bedroom unsupervised for over an hour with unfettered access to the completed Forms sent to Caron in accordance with their instructions.

42.     In light of the private and highly sensitive medical information contained in the Forms and other confidential information located in Plaintiff's room, Mrs. Franco should not have been given unfettered access to Plaintiff's room, but rather Plaintiff should have been made to wait in a lobby or common area of the Caron Ocean Drive facility until Mr. Franco was available. Other visitors of Caron patients were not given unrestricted access to the rooms of the patients they were visiting.

43.     While unsupervised in Plaintiff's room, based on Caron's recklessness, Mrs.

Franco saw and read the Forms.

44.    As a direct result of Caron giving Mrs. Franco access to the Forms, Plaintiff's marriage, relationship with his children, and business have all irreparably deteriorated.

45.    Caron's reckless and irresponsible behavior fell well below the standard of care required of reasonably prudent healthcare providers.

**D.  Plaintiff's Continued Treatment and Misdiagnosis**

46.    As a follow-up to Plaintiff's treatment at Caron Renaissance, after Plaintiff returned to New York, he was treated in New York by the program director of XYZ Corp., a facility located in Manhattan that is owned and operated by Caron.

47.    Two doctors subsequently concluded that Plaintiff was misdiagnosed with a chemical addiction; that Plaintiff never had a chemical dependency addiction; and he was, in reality, suffering from bi-polar disorder.  Plaintiff and his business partner who visited Plaintiff at Caron Ocean Drive had initially told professionals at Caron that his treating physician in New York believed that he had was suffering from that condition, but the doctors at Caron dismissed the potential diagnosis and failed to investigate it further.

48.    Had Plaintiff been properly diagnosed at his assessment at Hanley, he would never have needed to complete the Forms nor would he have been treated at Defendants' facility.

49.    Subsequent to that misdiagnosis, Plaintiff began getting treatment for bi-polar disorder, including taking prescribed medication—medication that would be prohibited if Plaintiff truly had a chemical dependency.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

50.    Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

51.     The PPPN and Patient Handbook were valid and enforceable contracts.

52.     As set forth *supra*, Defendants breached the PPPN and Patient Handbook by failing to maintain the privacy and confidentiality of Plaintiff's private and highly-sensitive healthcare information, including implementing reasonable and appropriate physical, administrative and technical safeguards to protect it.

53.     Plaintiff fully performed his obligations under the PPPN and Patient Handbook.

54.     By reason of the foregoing, Plaintiff was damaged and is entitled to a monetary judgment against Defendants in an amount to be determined at trial, but not less than $1,000,000.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Negligence)

55.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

56.     Defendants owed Plaintiff a duty to keep Plaintiff's records and sensitive healthcare information confidential and to ensure that no one other than authorized therapists at Caron Ocean Drive saw the Forms.

57.     As set forth in more detail *supra*, Defendants breached this duty, by *inter alia* failing to provide an encrypted server or secured portal by which to transmit the Forms; allowing Plaintiff's wife, Mrs. Franco, to remain in Plaintiff's room unsupervised for over an hour, giving her unrestricted access to the Forms; and failing to follow various technical protocols to ensure that the Forms remained confidential and secure.

58.     Defendants' negligence and reckless behavior directly and proximately caused the decline and eventual dissolution of Plaintiff's marriage, the estrangement Plaintiff has with

his children, and problems with Plaintiff's business.

59.     But for Defendants' reckless behavior, Plaintiff would not be estranged from his wife and children.

60.     By reason of the foregoing, Plaintiff was damaged and is entitled to a monetary judgment against Defendants in an amount to be determined at trial, but not less than $1,000,000.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

61.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

62.     Plaintiff has had several physical medical complications including, but not limited to insomnia, that have been caused by the severe emotional distress and psychological trauma that Defendants perpetrated through their reckless and negligent conduct, as set forth *supra*.

63.     Mrs. Franco, who was directly injured by Defendants' reckless conduct, had a close and personal relationship with her husband.

64.     As set forth *supra,* Plaintiff was directly involved in Defendants' reckless and negligent behavior.

65.     By reason of the foregoing, Plaintiff was damaged and is entitled to a monetary judgment against Defendants in an amount to be determined at trial, but not less than $1,000,000.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

66.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as

contained in the above paragraphs with the same force and effect as if fully set forth herein.

67.     Defendants owed Plaintiff, a patient at Caron, a fiduciary duty to keep his sensitive information confidential.

68.     Defendants breached this fiduciary duty by ignoring industry standards and policies set forth in the Patient Handbook by not providing proper technical safeguards and encryptions of Plaintiff's confidential information.

69.     Additionally, instead of making Mrs. Franco wait in Caron Ocean Drive's lobby or in a common area, Defendants allowed Mrs. Franco to remain unsupervised in Plaintiff's room for over an hour, which gave Mrs. Franco access to Plaintiff's confidential information.

70.     By reason of the foregoing, Plaintiff was damaged and is entitled to a monetary judgment against Defendants in an amount to be determined at trial, but not less than $1,000,000.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Medical Malpractice as to Defendant Hanley)

71.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

72.     As a healthcare provider, Defendant Hanley owed Plaintiff, a patient at the Hanley facility, a duty of reasonable and appropriate care.

73.     As set forth more fully *supra*, Defendant Hanley breached this duty by ignoring the standard of care, including Plaintiff's symptoms and a diagnosis of bi-polar disorder suggested by Plaintiff's treating physician.

74.     As a result of ignoring the standard of care, Plaintiff's bi-polar disorder was misdiagnosed as a chemical dependency addiction.

75.     As a result of this misdiagnosis, Plaintiff was not properly treated for over six months for bi-polar disorder.

76.     Additionally, as a result of this misdiagnosis, Plaintiff was forced to undergo invasive treatment in which Plaintiff disclosed sensitive details about his sexual and psychosocial proclivities—treatment which could have been avoided had Plaintiff been properly diagnosed with bi-polar disorder.

77.     Accordingly, as set forth more fully *supra*, this misdiagnosis caused a rift in Plaintiff's relationship with his family, the failure of Plaintiff's business, severe mental anguish and insomnia.

78.     By reason of the foregoing, Plaintiff was damaged and is entitled to a monetary judgment against Defendants in an amount to be determined at trial, but not less than $1,000,000.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Violation of Fla. Stat. § 381.026)

79.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

80.     Fla. Stat. § 381.026(4)(a)(2), also known as the Patient Bill of Rights, states:

> Every patient who is provided health care services retains certain rights to privacy, which must be respected without regard to the patient's economic status or source of payment for his or her care.  The patient's right to privacy must be respected to the extent consistent with providing adequate medical care for the patient and with the efficient administration of the health care facility or provider's office.

81.     As set forth more fully *supra*, Defendant Hanley breached this patient right by by, *inter alia*, (1) failing to provide proper technical safeguards and encryptions of Plaintiff's

confidential information; and (2) recklessly allowing Mrs. Franco to stay unsupervised in Plaintiff's private bedroom for over an hour, where she had unfettered access to the confidential and sensitive information contained in the Forms.

82.     By reason of the foregoing, Plaintiff was damaged and is entitled to a monetary judgment against Defendants in an amount to be determined at trial, but not less than $1,000,000.

**WHEREFORE**, Plaintiff demands judgment as follows:

a.  On Plaintiff's first cause of action, awarding a judgment in favor of Plaintiff and against Defendants Caron of Florida, Caron Ocean Drive, Hanley, and XYZ Corp. in an amount to be determined at trial, but not less than $1 million;

b.  On Plaintiff's second cause of action, awarding a judgment in favor of Plaintiff and against Defendants Caron of Florida, Caron Ocean Drive, Hanley, and XYZ Corp. in an amount to be determined at trial, but not less than $1 million;

c.  On Plaintiff's third cause of action, awarding a judgment in favor of Plaintiff and against Defendants Caron of Florida, Caron Ocean Drive, Hanley, and XYZ Corp. in an amount to be determined at trial, but not less than $1 million;

d.  On Plaintiff's fourth cause of action, awarding a judgment in favor of Plaintiff and against Defendants Caron of Florida, Caron Ocean Drive, Hanley, and XYZ Corp. in an amount to be determined at trial, but not less than $1 million;

e.  On Plaintiff's fifth cause of action, awarding a judgment in favor of Plaintiff and against Defendant Hanley in an amount to be determined at trial, but not less than $1 million;

f.  On Plaintiff's sixth cause of action, awarding a judgment in favor of Plaintiff and against Defendants Caron of Florida, Caron Ocean Drive, Hanley, and XYZ Corp. in an amount to be determined at trial, but not less than $1 million;

g.  Awarding Plaintiff his costs and expenses, including his attorneys' fees to the extent permitted by applicable law; and

      h.   Awarding any such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
          March 16, 2016

                     By:    /s/ Adam S. Katz, Esq. _____
                                Darren Oved, Esq.
                                Adam S. Katz, Esq.
                                OVED & OVED LLP
                                *Attorneys for Plaintiff*
                                401 Greenwich Street
                                New York, New York 10013
                                Tel:  212.226.2376